Statement of Facts.

## A. SWEETZER v. B. B. ATTERBURY ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY.

Argued February 24, 1890—Decided October 13, 1890.
[To be reported.]

(*a*) Owning encumbered land, Sweetzer transferred it, by means of a sheriff's sale, to a creditor, for the purpose of enabling the latter to mortgage it for the payment of the former's debts, the vendee agreeing by parol to hold the property for five years, apply the rents and profits to the payment of such mortgage, and then to re-convey:

1. The primary purpose of the entire transaction being to effect a loan on Sweetzer's property for his benefit, a mortgage executed by the sheriff's vendee, in pursuance of the arrangement, bound, not only the term of years pleged to the mortgagor by Sweetzer, but also Sweetzer's interest in the land under the parol defeasance: Sweetzer's App., 71 Pa. 264.

2. Whether the holder of the mortgage was or was not aware of the agreement respecting the occupancy of the property and the appropriation of the rents, the reception of those rents by the mortgagor was not a payment on the mortgage, the debt secured by it being Sweetzer's debt, and the right of action for failure to apply being in him alone.

3. The holder of the mortgage having brought a scire facias thereon against the mortgagor therein named, and recovered a judgment, without making Sweetzer a party, and Sweetzer, who was then in possession, having obtained a rule to open the judgment, which rule was afterwards discharged, when he allowed the property to be sold by the sheriff, the sale passed his title to the purchaser.

4. The holder of the mortgage having become the purchaser at the foreclosure sale, facts, which would have been a defence to the suit upon the mortgage, were inadmissible in ejectment between Sweetzer and such purchaser, in behalf of the former, even though, by collusion between the latter and the mortgagor, that suit was kept from Sweetzer's knowledge.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and McCOLLUM, JJ.

No. 129 July Term 1889, Sup. Ct.; court below, No. 327 April Term 1883, C. P.

On February 26, 1883, Addison Sweetzer brought ejectment against B. B. Atterbury and Olivia P. Atterbury, his wife, and others, for two lots of ground in the city of Scranton, upon

which was erected a building known as Washington Hall. The defendants' plea was not guilty.

At the trial on June 21, 1887, it was shown that in 1861 the plaintiff was the owner of the lots in controversy, and erected Washington Hall thereon. This erection left him largely in debt, and liens to a considerable amount were entered against his property. Among the creditors, not secured by liens, were James Jifkins, James Jifkins, Jr., and Thomas Jifkins, who were partners under the name of Jifkins & Sons. They were also indorsers upon his paper.

In 1862 or 1863, after having made unsuccessful efforts to borrow a sufficient amount of money upon his property to relieve him of his embarrassment by consolidating his indebtedness and gaining time for its payment, the plaintiff made an arrangement, at the suggestion of J. H. Scranton, with Jifkins & Sons, by which the Washington Hall property was to be transferred to Jifkins & Sons through the medium of a sheriff's sale, so as to clear it of liens, and they were then to execute a mortgage for $12,000, to be advanced by persons whom Scranton represented as an agent for the loaning of money; and, after paying the plaintiff's debts with the proceeds of said mortgage, and such additional sums as it might be necessary for them to advance themselves for that purpose, they were to hold the property for five years, applying its rents and profits to the mortgage and to their reimbursement, and at the end of five years, after a settlement of accounts between them and the plaintiff, the property was to be re-conveyed to him.

In pursuance of this arrangement the property was sold at sheriff's sale, under the direction of Scranton's attorney, upon a small judgment, and was bought in the name of Scranton for $50, and conveyed to him by the sheriff. Scranton then conveyed it to the Jifkinses, who executed and delivered to him their bond, secured by a mortgage upon said property, in the sum of $16,200, that being the amount of a loan of $12,000, with the interest thereon for the time it was to run added in. Scranton at once assigned the bond and mortgage to William E. Dodge, executor of the will of Anson G. Phelps, deceased, who had furnished the money so loaned. In 1865, upon the settlement of the estate of Phelps, his executor transferred said bond and mortgage to Mrs. Atterbury, one of the defend-

ants, on account of a distributive share of said estate to which she was entitled.

On June 20, 1868, the plaintiff commenced a proceeding in equity against the Jifkinses, to compel an accounting and a re-conveyance of the property to him, in accordance with the arrangement made at the time of the sheriff's sale. These proceedings resulted in a decree in his favor: Sweetzer's App., 71 Pa. 264.

In 1878, after the plaintiff had regained possession of the property under the decree of the Supreme Court in Sweetzer's App., supra, Mrs. Atterbury brought a scire facias, and an alias scire facias, upon the mortgage given by James Jifkins et al. to J. H. Scranton. These writs were returned served as to Thomas Jifkins, and nihil as to James Jifkins and James Jifkins, Jr. They were not served upon Sweetzer, and he was not made a party to the proceedings. On June 1, 1878, judgment for want of an affidavit of defence was rendered in favor of Mrs. Atterbury, in the suit upon the mortgage. On December 23, 1878, upon petition of Sweetzer, a rule was granted to show cause why that judgment should not be opened, and why he should not be permitted to defend as a terre-tenant. After a hearing, the rule was discharged by ELWELL, P. J. of the 26th district, specially presiding. A writ of levari facias was then issued by Mrs. Atterbury, and on August 9, 1879, the property was purchased by her thereunder at sheriff's sale, and in pursuance thereof she afterwards obtained a sheriff's deed for the same. On September 16, 1879, she brought ejectment against the present plaintiff, Sweetzer, for said property, and in that action she recovered a judgment, which, on writ of error to No. 86 July Term 1881, Sup. Ct., was affirmed: Sweetzer v. Atterbury, 100 Pa. 18. She then obtained possession by a writ of habere facias possessionem.

The case in chief of the plaintiff and the defendants having closed, the plaintiff in rebuttal made offers in substance as follows :

(a) To show by the second report of the master, in the equity suit between the plaintiff and James Jifkins and others, confirmed by the court, (which report stated an account charging the defendants in said suit with the rents and profits of the property, and crediting them, inter alia, with payments of debts

of the plaintiff, including certain payments of interest made on account of the mortgage, and found a balance due the plaintiff on October 20, 1877, of $17,923.43), that the terms of the arrangement between the plaintiff and Jifkins & Sons, as declared and adjudicated by the Supreme Court in Sweetzer's App., 71 Pa. 264, were fully complied with; the sheriff's sale of the property in 1863, not having been an alienation of the plaintiff's title, but simply a pledge of the property for five years, the rents and profits to pay his indebtedness, said rents and profits having fully paid the whole indebtedness.[3]

(*b*) To show by the deposition of Samuel Sherrerd, who was admitted to be dead, that he was the attorney of Scranton and Dodge in the transaction of the mortgage, and that he suggested the sheriff's sale to Scranton, not as a matter of necessity, but as a mere convenience.[4]

(*c*) To show by the testimony of the plaintiff that Scranton furnished the money borrowed in 1863, as the agent of William E. Dodge, and was Dodge's agent throughout the whole transaction; that after the end of the five years for which the property was pledged, Scranton being still the agent receiving payments from Jifkins & Sons on the mortgage, the witness fully informed him of the situation; and that Scranton had full knowledge of the proceedings in equity for a re-conveyance, and was a witness therein, as was also, Samuel Sherrerd, the attorney of Scranton and Dodge in the transaction.[5]

(*d*) To show by the testimony of Thomas Jifkins and J. H. Campbell that I. J. Post, attorney for Mrs. Atterbury, made a collusive arrangement with Jifkins to defeat the effect of the decree of the court in the equity proceedings, by suing out a scire facias and service of it on the mortgagors and by allowing judgment to be entered, without the knowledge of the plaintiff Sweetzer, who was then in possession of the property; and that the judgment upon the mortgage in favor of Mrs. Atterbury was obtained in pursuance of that arrangement.[6] [10]

(*e*) To show, in connection with a renewal of the offer respecting collusion between Mrs. Atterbury and the mortgagors, that the amount of rents and profits wherewith the mortgage was to be paid, under the original arrangement upon which it was made, had fully paid the amount of the mortgage before the said collusive arrangement was entered into: [11]

(*f*) To show that the amount of money paid directly to William E. Dodge and Mrs. Atterbury, through their agent J. H. Scranton, by the Jifkinses, and the value of the rents and profits received by Mrs. Atterbury since the property had gone into her possession under the proceedings put in evidence by the defendant, had fully paid the amount of the indebtedness, for which they held the mortgage against the Jifkinses, which they put in evidence.[12]

The offers, so made by the plaintiff, were severally rejected by the court, upon objections made by the defendants. The ground of the objection made to the testimony proposed to be given by the plaintiff, Sweetzer, was that the witness was incompetent to testify as to transactions occurring in the lifetime of Scranton and Dodge, both of whom were shown to be dead. Exceptions.

At the close of the testimony, the court, ARCHBALD, P. J., directed the jury to return a verdict in favor of the defendants.[16] A verdict being returned as directed and judgment entered, the plaintiff took this appeal, specifying that the court erred:

3–6. In rejecting the plaintiff's offers.[3 to 6]

10–12. In rejecting the plaintiff's offers.[10 to 12]

16. In directing a verdict for the defendants.[16]

*Mr. A. Ricketts*, for the appellant:

1. It is very clear that the Jifkinses could not execute a mortgage that would bind any other than their own estate in the land: § 8, act of 1705, 1 Sm. L. 59. The only estate they ever had, in this case, was a term of five years, and the property was transferred to them for that term, only, by way of pledge for the loan they agreed to furnish. They were authorized to execute a mortgage upon it undoubtedly, but only for the said term; for it was the express condition of the granting of this term, that they were continually to apply the rents and profits to the discharge of the loan, and if at its expiration any balance remained undischarged, Sweetzer was to pay off such balance at once, and be at once reinvested with the possession. No such balance remained undischarged, and the term expired by its own limitation, the property reverting to Sweetzer. This is settled and has become res judicata by the decision in

Sweetzer's App., 71 Pa. 264, and the account settled thereunder.

2. The case is interesting, because it is an instance of a genuine vivum vadium, as distinguished from a mortuum vadium. We are in the habit of calling all pledges of. land mortgages, such pledges usually being of that character; but there is nothing in the law to prevent the giving and accepting of. a living pledge, and that is what the parties did in this case: 2 Bl. Com., 157; Co. Litt., *332, note; Glanville, lib. 10, c. 6; 1 Reeve's Hist. Eng. Law, 161.; Yates v. Hambly, 2 Atk. 360, 362; Fenwick v. Reed, 1 Mer. 114, 123. Cases of this kind are rare; but, clearly, this was a case of a vivum vadium; and long before Mrs. Atterbury issued her scire facias, the pledgors had ceased to have any title whatever to the land in question. She claims to be a bona fide purchaser. Of what? All that she ever purchased was the Jifkins title, and that was nothing. She took special pains to confine her purchase to that title, even to the extent of collusion and conspiracy against Sweetzer, as we offered to prove, and as must therefore be assumed upon this hearing. The question now is one of plain legal title. The equities between Sweetzer and the Jifkinses were settled in Sweetzer's App., supra, and that decision is conclusive upon her as the claimant of the Jifkins title: 1 Greenl. Ev., § 523; Carver v. Jackson, 4 Pet. 85.

3. If notice of Sweetzer's rights be deemed material, we submit that Mrs. Atterbury cannot claim to have purchased without such notice. After she took the bond and mortgage from her father's executor, she continued Scranton as her agent, in the same matter, and she is chargeable with his knowledge. Knowledge is notice, and notice to an agent in the same transaction is notice to the principal: Le Neve v. Le Neve, 2 Lead. Cas. Eq. *23, and notes. Formal notification is unnecessary: Biddle v. Moore, 3 Pa. 161. Moreover, the very method of the transfer, which lay in the line of her title, amounted to notice. But the doctrine of lis pendens is of controlling effect on this point. By the filing of Sweetzer's bill in equity, in 1868, she had notice of his claim: Fessler's App., 75 Pa. 483; Dovey's App., 97 Pa. 153. Granting every consideration possible in her favor, the utmost she could legally and righteously

Arguments.

claim would be the right to hold the property until her loan was fully paid.

4. To hold, as the court below apparently did, that her acquisition of the Jifkins right, invested her also with the title of Sweetzer, without any process against him, and without an opportunity for a hearing on his part, even after collusion by her to prevent such a hearing, is to violate rights guaranteed to him by both the national and the state constitutions. Much was said in the trial below by her counsel about her having a debt confessedly due and unpaid. It was confessed by the party with whom she was in collusion, but Sweetzer denied her claim instead of confessing it. We submit, further, that the court erred in rejecting the testimony of the plaintiff, on the ground that the death of Scranton and Dodge rendered him incompetent. The thing in action is Sweetzer's title, and the ejectment is between parties in full life. The rule on which the court acted applies to suits upon choses in action: Warren v. Steer, 112 Pa. 634.

*Mr. W. H. Jessup* (with him *Mr. Jessup and Mr. Hand*), for the appellees:

1. This case is not different from what it was when in this court before: Sweetzer v. Atterbury, 100 Pa. 18. It is settled beyond question that the mortgagor had the right to make this mortgage, and that Dodge and Mrs. Atterbury each paid value for it. In his bill in equity, the plaintiff averred that he was the borrower upon the mortgage: Sweetzer's App., 71 Pa. 264. What, then, becomes of the claim he now sets up, even supposing that we had knowledge of the whole transaction? But it is not the law that by employing Scranton, after she acquired the mortgage, Mrs. Atterbury became affected by knowledge he might have acquired in prior transactions with other parties: Houseman v. B. & L. Ass'n, 81 Pa. 256; Bracken v. Miller, 4 W. & S. 102; Hood v. Fahnestock, 8 W. 489; Martin v. Jackson, 27 Pa. 504; Smith's App., 47 Pa. 128; Meehan v. Williams, 48 Pa. 238.

2. Nor can the doctrine of lis pendens possibly apply to this case. Mrs. Atterbury purchased the mortgage in 1865, and the bill in equity was not filed till 1868. She acquired no title after that time. Her title relates to the date of the mortgage.

Arguments.

Moreover, the allegations of the bill gave notice of a claim very different from that now set up. The plaintiff was incompetent to testify to matters occurring in the lifetime of Scranton and Dodge : Swank v. Phillips, 113 Pa. 482; Duffield v. Hue, 129 Pa. 94. The proposed testimony, however, was immaterial. We have nothing to do with the rents of the property before we purchased it at the last sheriff's sale, and it savors of extreme coolness to ask us to account for the subsequent rents.

3. As to the mortgagee, Sweetzer was a terre-tenant of the land, and as such he was not entitled to notice of the scire facias. He had no defence to it and he can make none here : Nace v. Hollenback,1 S. & R. 548; Blythe v. McClintic, 7 S. & R. 341; Mather v. Clark, 1 W. 491. Nor is the fact that the mortgage had been paid before judgment any defence, when the mortgagee had bid in the property on a levari facias : Blythe v. Richards, 10 S. & R. 266; Nace v. Hollenback, supra. Even fraud in procuring a mortgage cannot be set up in ejectment, when a rule to open the judgment has been obtained and it has failed : Lewis v. Nenzel, 38 Pa. 222. Mrs. Atterbury was a bona fide purchaser, without notice, and she took discharged of all secret trusts in third parties : Mott v. Clark, 9 Pa. 399; Wethrill's App., 3 Gr. 281 ; Pryor v. Wood, 31 Pa. 142.

*Mr. Ricketts,* in reply :

1. The authorities cited by the appellee do not support the position she advances, but declare precisely the contrary. The court refused Sweetzer permission to take defence to the scire facias on the mortgage and, upon reflection, we think rightly ; for, as he had not been made a party to the writ, the judgment could in no way affect his rights. It cannot be said that the refusal to give him a chance to be heard was giving him a day in court. In the former ejectment, Sweetzer v. Atterbury, 100 Pa. 18, the judge in the court below declared that Sweetzer was bound to take an appeal from the discharge of his rule, under the act of April 4, 1877, P. L. 53, or be forever barred. That the judge was mistaken, is clear, not only from the words of the act, but from its judicial construction : Lamb's App., 89 Pa. 407; First N. Bank's App., 106 Pa. 68. This case differs from Sweetzer v. Atterbury, 100 Pa. 18. We did not have then the evidence of collusion, which we offered in the present case.

Opinion of the Court.

2. Moreover, the learned justice who delivered the opinion in the former case, labored under a misapprehension. He assumed that Mrs. Atterbury took the mortgage without notice, whereas we offered to prove that she had notice. And he evidently overlooked the rule that the assignee of a purchaser of a mortgage stands in no better position than he: Mullison's Est., 68 Pa. 212. He was misled, also, by the assertion of counsel, repeated in the present case, that Dodge "sold and assigned the mortgage" to Mrs. Atterbury. Dodge, as an executor, merely transferred to her this mortgage as one of the securities in which the money of her father's estate was invested. This was not a sale. A sale is the passing of rights of property for money: Williamson v. Berry, 8 How. 495, 544.

OPINION, Mr. JUSTICE McCOLLUM:

The very ingenious argument of the able counsel for the appellant has failed to satisfy us that his present contention is equitable or sound. The primary purpose of the parties to the transaction disclosed in Sweetzer's App., 71 Pa. 264, was to effect a loan on Sweetzer's property for his benefit. It was plainly their intention that the property should be "a clear and unencumbered security" for the loan, and that Dodge should have a first mortgage upon it for the money advanced by him. This sufficiently appears from the claim of the appellant in the case cited. It was said by this court, in that case, that the transaction put the Jifkinses "in Sweetzer's stead, so far as the mortgaging of the property was concerned. It was Sweetzer's debt that was secured by the Dodge mortgage, and it was his land that was pledged by his authority for its payment. Whatever title to this land remained in him after the sheriff's sale was subject to the lien of this mortgage. It bound the fee. It was not for him, after appropriating, in the manner agreed upon, the moneys secured by the mortgage, to allege that the mortgagee acquired nothing by it. In Sweetzer's Appeal, supra, we enforced a parol agreement when its attempted repudiation was a fraud upon the appellant, and we cannot allow him to perpetrate a like fraud by denying an obligation founded upon it. In this view of the case it is of no consequence whether the assignee of the mortgage had knowledge of his agreement with the Jifkinses concerning the occu-

pancy of the property and the appropriation of its rents.    The reception by the latter of the profits arising from the possession and use of the property was not a payment on the mortgage. It was their duty to account for these according to the terms of their agreement with him.    The right of action for a breach of that duty was not in the mortgagee or his assigns, but in the appellant, to whom they were bound to account.    It is not pretended that the mortgage was paid before foreclosure, or that the judgment obtained in the suit upon it was greater than the sum due to the plaintiff therein.    The appellant knew of this judgment, and moved the court to open it, on the grounds stated in his offers of evidence in this case.    The motion was denied, and, rather than pay his own just debt, he allowed his property to be sold for it.    The process throughout conformed to the instrument by which the property was pledged.

We are of opinion that the facts alleged in the rejected offers could not have constituted a defence to the suit upon the mortgage, and that they were irrelevant and immaterial in this issue.

The judgment is affirmed.